**PIONEER REALTY AND LAND COMPANY, Century 21 Landmark Realty, and Charles and Jean Foltz, husband and wife, Plaintiffs and Appellants,**

v.

**MORTGAGE PLUS, INCORPORATED, Defendant and Appellee.**

**Civ. No. 10524.**

Supreme Court of North Dakota.

March 29, 1984.

Arlen M. Ruff of Kelsch, Kelsch, Bennett, Ruff & Austin, Mandan, for plaintiffs and appellants.

William D. Schmidt of Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendant and appellee.

### VANDE WALLE, Justice.

This case involves an action to recover damages for an alleged breach of agreements to lend money for the purchase of single-family residences. The district court, finding that no binding agreements to lend money had been made by the defendant, Mortgage Plus, Inc., entered a judgment dismissing the lawsuit on its mer-

its from which the plaintiffs have now appealed to this court. We affirm.

During the summer of 1980, Mortgage Plus, Inc., a Colorado corporation engaged in the business of providing home loans, opened a branch office in Bismarck. Douglas Kocourek, manager of the Bismarck branch office, and Rick Harper, a vice president of Mortgage Plus, visited every real estate office in Bismarck and Mandan during that summer to solicit business. During those visits, Kocourek and Harper informed the realtors that they had money available for first-mortgage loans at an interest rate of 11½ percent plus a discount fee of two points. As a result of the visits, various realtors in Bismarck and Mandan, including the plaintiffs, Pioneer Realty and Land Company and Century 21 Landmark Realty, encouraged potential homebuyers to submit loan applications to Mortgage Plus. At the time these potential homebuyers signed earnest-money agreements to purchase homes and at the time they submitted their loan applications to Mortgage Plus, they received an oral quote from Kocourek that funds were currently available from Mortgage Plus at an interest rate of 11½ percent plus a fee of two or three discount points.[1] All applications were for either FHA or VA insured loans. The loan applicants were also told that it would take approximately four to six weeks to process the loan applications.

With that information the loan applicants, including the plaintiffs, Charles and Jean Foltz, set closing dates for terminating apartment leases or selling their own homes and for closing the sale on the homes they had agreed to purchase. It is undisputed that the loan applicants met Mortgage Plus's qualifications for receiving home loans. Nevertheless, as the various closing dates arrived and passed, loan monies were not made available to the applicants by Mortgage Plus. An internal memo, dated August 19, 1980, circulated to all branch offices of Mortgage Plus from

---

1. Apparently Kocourek quoted "three" discount points to the Foltzes, but he quoted "two" dis-

count points to the other loan applicants involved in this lawsuit.

the Colorado office, indicates that effective August 20, 1980, all FHA and VA loans in process were to have funds provided at an interest rate of 12 percent plus a discount fee of nine points.

When the loan applicants learned that Mortgage Plus was not going to provide funds at the originally quoted rates, they transferred their loan applications to other lending institutions. The applicants subsequently received home loans from those other institutions but at interest rates or discount points higher than those originally quoted by Mortgage Plus. Part of the additional cost of the alternative loans was paid by the plaintiff realtors and part was paid by the homebuyers. The plaintiff realtors, having received assignments from a number of the loan applicants to any right or claim they might have against Mortgage Plus, filed this action, together with the Foltzes, against Mortgage Plus.

On appeal, the plaintiffs raise a number of issues of which we conclude our answer to the following single issue is dispositive:

Whether or not the district court erred by failing to find that a binding obligation to lend money at a specified interest rate and discount points existed between Mortgage Plus and the loan applicants.

The district court determined that Mortgage Plus and the loan applicants represented in this lawsuit did not enter into any oral or written agreements binding Mortgage Plus to provide home-loan funding at a specified interest rate and discount point fee.

The determination of whether or not the parties have mutually consented to enter into an oral contract is a question of fact which will not be set aside on appeal unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Gravel Products, Inc. v. Neshem-Peterson, Inc.*, 335 N.W.2d 323 (N.D.1983); *Hirschkorn v. Severson*, 319 N.W.2d 475 (N.D.1982).

Having reviewed the record in this case, we conclude that there is sufficient evidence to support the trial court's finding that Mortgage Plus did not enter binding agreements with the loan applicants to provide home-loan funding at a specified interest rate and discount point fee. It is undisputed that Kocourek quoted home-loan funding to be available, at the time the loan applications were submitted, at an interest rate of 11½ percent together with a fee of two or three discount points. However, there is evidence upon which the district court could find, as it did, that Kocourek's quotations did not constitute a binding agreement or commitment to provide funds at the quoted rates.

Kocourek testified that, in his opinion, at no time did he commit, orally or in writing, to provide home-loan money to any applicant at a specified interest rate or discount points.

The substance of the loan applicants' testimony was that Kocourek quoted the interest rate and discount points in effect at the time the loan applications were filed, but not necessarily the rates that would be in effect when the loans closed. In that regard, Jean Foltz testified:

"Q. When you met with him [Kocourek], did you discuss interest rates and points?

"A. Yes, we did.

"Q. What did Mr. Kocourek say to you at that time?

"A. The rate at that time was eleven and-a-half, and three points."

Each of the loan applicants signed the following written statement during the time that their loan applications were being processed by Mortgage Plus:

"I/We the undersigned who have applied for the mortgage loan on the above property do agree that the loan will bear the maximum interest rate in effect at the time of closing but in no event will the interest rate be less than that in effect at the time of application."

At no time did any of the loan applicants receive a written commitment from Mortgage Plus relative to the interest, discount points, or date of closing on the loan application requests.

Although Mortgage Plus, through its agents, may have quoted interest rates and discount points without any intent to loan funds at those rates, it is not our task to speculate in that regard. We are not left with a firm and definite conviction that the trial court made a mistake in its determination that the plaintiffs failed to prove the existence of any oral agreement binding Mortgage Plus to provide home loans at specified interest rates and discount points. We conclude, therefore, that the district court's finding to that effect is not clearly erroneous.

Having determined that Mortgage Plus did not enter into binding agreements to lend money, it is unnecessary to discuss the other issues raised by the plaintiffs on appeal. In accordance with this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and SAND, GIERKE and PEDERSON, JJ., concur.